The Honorable Jeremy Hutchinson State Senator
172 Courts Lane Little Rock, Arkansas 72223
Dear Senator Hutchinson:
I am writing in response to your request for my opinion on the following two questions:
 1. Pursuant to provisions of A.C.A. 25-75-601 et seq., can advertising and promotion funds be used for city utility connections, roadwork or other similar types of work, which a city government may do to attract business to the city?
 2. Can these funds be used to fund economic incentives to attract business and industry to a city as a method of promoting the city?
In your preface to your questions, you suggest that they arose in the course of a debate among Benton officials regarding "whether or not advertising and promotion funds may be used for more than just those limited items in ACA § 26-75-606."
RESPONSE
With respect to your first question, in my opinion, a city advertising and promotion commission is restricted in its expenditure of funds to the permissible uses of advertising and promotion revenues set forth in A.C.A. §§ 26-75-606(a) and (b) (Repl. 2008), subject to the limitations on expenditures set forth in A.C.A. § 26-75-606(c). To the extent that the proposed expenditures are designed to effect "general capital improvements" or "costs associated with the general *Page 2 
operation of the city," these conditions would appear to preclude hamburger-tax revenues being used as a source of funding. However, I must stress that in my statutory capacity as an advisor on the conditions of constitutional and statutory law, I am not a finder of fact. I am consequently unable to determine the scope of your question, particularly regarding whether what you designate as "other similar types of work" might fall within the scope of anticipated projects covered by the hamburger tax. I will opine, however, that those revenues that you characterize as "more than just those limited items" set forth in the statute cannot be devoted to purposes other than those itemized in the statute itself. Accordingly, based upon the information provided, I believe the answer to this question is, in all likelihood, "no." With respect to your second question, to the extent the phrase "to fund economic incentives to attract business and industry" might be read as entailing a transfer of hamburger-tax revenues to private business and industry, I believe such a transfer might well run afoul not only of the statute just recited but also of Ark. Const. art. 12, § 5, which prohibits cities from transferring tax revenues to private entities. If "fund[ing] economic incentives" would not entail any such transfer, the permissibility of the proposed activity would be dictated by the rules set forth in A.C.A. § 26-75-606.
Question 1: Pursuant to provisions of A.C.A. 25-75-601 etseq., can advertising and promotion funds be used for city utilityconnections, roadwork or other similar types of work, which a citygovernment may do to attract business to the city?
In my opinion, a city advertising and promotion (AP) commission may expend funds only in accord with the permissible uses of AP revenues set forth in A.C.A. §§ 26-75-606(a) and (b) (Repl. 2008) and so long as the proposed uses would not be barred by any of the limitations set forth in A.C.A. § 26-75-606(c). If, as your question implies, the proposed expenditures were designed to serve some purpose other than the ends set forth in the recited statute, I believe the answer to this question would be "no."
Section 26-75-606 sets forth the permissible uses of the proceeds received from collection of the city's advertising and promotion tax, which is commonly known as the "hamburger tax." This statute provides in pertinent part:
 (a)(1)(A) In the manner as shall be determined by the municipal advertising and promotion commission, all funds credited to the city *Page 3 
advertising and promotion fund pursuant to this subchapter shall be used for the:
 (i) Advertising and promoting of the city and its environs;
 (ii) Construction, reconstruction, extension, equipment, improvement, maintenance, repair, and operation of a convention center;
 (iii) Operation of tourist promotion facilities in the city or the county where the city is located if the city owns an interest in the convention center or facility, and facilities necessary for, supporting, or otherwise pertaining to, a convention center; or
 (iv) Payment of the principal of, interest on, and fees and expenses in connection with bonds as provided in this subchapter.
 (B) The commission may engage such personnel and agencies and incur such administrative costs as it deems necessary to conduct its business.
 (2)(A) The commission is the body that determines the use of the city advertising and promotion fund.
 (B) Pursuant to this section, if the commission determines that funding of the arts is necessary for or supporting of its city's advertising and promotion endeavors, the commission may use its funds derived from the hotel and restaurant tax.
 (3)(A) The commission may purchase, own, operate, sell, lease, contract, or otherwise deal in or dispose of real property, buildings, improvements, or facilities of any nature in accordance with this subchapter.
 (B) If the commission is dissolved, the city shall assume the authority under subdivision (a)(3)(A) of this section. *Page 4 
 (b)(1)(A) Any city of the first class that may levy and does levy a tax pursuant to this subchapter may use or pledge all or any part of the revenues derived from the tax for the purposes prescribed in this subchapter or for the operation of tourist-oriented facilities, including, but not limited to, theme parks and other family entertainment facilities or for the retirement of bonds issued for the establishment and operation of other tourist-oriented facilities, including, but not limited to, theme parks and other family entertainment facilities.
 (B) These revenues shall be used or pledged for the purposes authorized in this subsection only upon approval of the commission created pursuant to this subchapter.
 (2) Funds credited to the city advertising and promotion fund pursuant to this subchapter may be used, spent, or pledged by the commission, in addition to all other purposes prescribed in this subchapter, on and for the construction, reconstruction, repair, maintenance, improvement, equipping, and operation of public recreation facilities in the city or the county where the city is located if the city owns an interest in the center or facility, including, but not limited to, facilities constituting city parks and also for the payment of the principal of, interest on, and fees and expenses in connection with bonds as provided in this subchapter in the manner as shall be determined by the commission for the purpose of such payment.
Subsection (c) of this statute sets forth the following limitations:
 (1) All local taxes levied as authorized in § 26-75-602(a) shall be credited to the city advertising and promotion fund and shall be used for the purposes described in subsections (a) and (b) of this section.
 (2) The taxes shall not be used:
 (A) For general capital improvements within the city or county; *Page 5 
 (B) For the costs associated with the general operation of the city or county; or
 (C) For general subsidy of any civic group or the chamber of commerce.
 (3) However, the commission may contract with such groups to provide to the commission actual services that are connected with tourism events or conventions.
 (4) The authorization and limitations contained in this subsection shall be reasonably construed so as to provide funds for promoting and encouraging tourism and conventions while not allowing such special revenues to be utilized for expenditures that are normally paid from general revenues of the city.
As reflected in subsection (a)(2) of this statute, the AP commission is the entity charged in the first instance with determining whether a particular usage of hamburger tax revenues falls within legislatively approved parameters.
You have asked whether an AP commission might devote hamburger-tax revenues "for city utility connections, roadwork or other similar types of work" intended "to attract business to the city." In this regard, you have defined the issue as being whether hamburger-tax revenues might be "used for more than just those limited items in A.C.A. § 26-75-606" — a question that apparently acknowledges that the proposed uses of hamburger-tax revenues would indeed exceed those authorized in the statute just recited.
With respect to the question of whether an AP commission might use hamburger-tax revenues for purposes not expressly authorized in the statute, I believe the clear answer is "no." Section 26-75-606 of the Code painstakingly itemizes a series of authorized uses for hamburger-tax revenues, underscoring the exclusiveness of such uses by itemizing a series of uses that are expressly prohibited. As the Arkansas Supreme Court has pointed out on various occasions: "The phrase expressio unius est exclusioalterius is a fundamental principle of statutory construction that the express designation of one thing may properly be *Page 6 
construed to mean the exclusion of another."[1] Applying this principle, I believe it is clear that the legislature did not intend to permit any use of hamburger-tax revenues for any purposes other than those recited in the statute. Accordingly, I believe a reviewing court would rule that the proposed extra-statutory use of hamburger-tax revenues is in all likelihood impermissible.
Subsection (a)(1)(A)(ii) of the statute authorizes using hamburger-tax revenues for various construction projects related exclusively to the establishment and operation of a "convention center." Subsection (b)(2) further authorizes using hamburger-tax revenues "for the construction, reconstruction, repair, maintenance, improvement, equipping and operation of public recreation facilities in the city or the county where the city is located if the city owns an interest in the center or facility." Subsection (b)(2) of the statute further prohibits using hamburger-tax revenues for "general capital improvements" or for "costs associated with the general operation of the city."
The improvements contemplated in your question — namely, "city utility connections, roadwork or other similar types of work" — do not appear related to a "convention center." They further do not appear related to "public recreation facilities" in which the city owns an interest. Moreover, funding "city utility connections, roadwork or other similar types of work" with an eye to attracting business, while a salutary goal in itself, would appear to fall within the proscription against using hamburger-tax revenues to fund "general capital improvements" or "costs associated with the general operation of the city." In my opinion, then, it would in all likelihood be impermissible to use hamburger-tax revenues to fund the recited projects. Having ventured this opinion, I should note that your reference to "other similar types of work" is sufficiently vague that it raises a factual question regarding whether a contemplated project might fall within the purview of projects properly undertaken using hamburger-tax revenues. Only a finder of fact could make this determination.
Question 2: Can these funds be used to fund economicincentives to attract business and industry to a city as a method ofpromoting the city?
This question is somewhat vague in that it is unclear precisely what you mean in suggesting that hamburger-tax revenues might be used "to fund economic *Page 7 
incentives to attract business and industry to a city as a method of promoting the city." As a general proposition, I can only opine that to the extent a use of hamburger-tax revenues would accord with the permissible uses set forth in A.C.A. § 26-75-606, that use would be permissible. The fact that, say, the construction of a convention center, which is clearly a permissible use, might serve as an attractant to business and industry would clearly not mark a prohibition against such an authorized use of available revenues. Although such an incidental benefit to business and industry might be permissible, I do not believe hamburger-tax revenues could be used as a direct quid pro quo incentive simply to prompt business or industry to locate in a particular location. Again, the statutory constraints on the use of hamburger-tax revenues must be observed.
This question in some respects tracks the following question addressed by my predecessor in the attached Op. Att'y Gen. No. 2002-239: "Can an advertising and promotion commission market, promote, and advertise a city for economic development purposes under current Arkansas statutes?" Although I will not here repeat my predecessor's analysis, I will note that he essentially approached the question in the same manner as I have in my response to your previous question. I concur fully with my predecessor in the following conclusion:
 It is my opinion that an advertising and promotion commission can do so if it has reasonably determined that such activity will serve the purposes set forth in A.C.A. § 26-75-606(a) and (b), and that this activity will not violate any of the limitations stated in A.C.A. § 26-75-606(c).
Your current question is somewhat more problematic than that addressed by my predecessor insofar as there may be a difference between "market[ing], promot[ing], and advertis[ing] a city for economic development purposes" — the issue addressed by my predecessor — and "fund[ing] economic incentives to attract business and industry to a city" — the issue I am addressing here. One might argue that to "market, promote, and advertise" is potentially more consistent with statutory imperatives than to "fund economic incentives to attract business and industry." It is unclear precisely what the latter formulation betokens. I will opine, however, that if this means diverting hamburger-tax revenues to private businesses and industries, such use would be highly problematic in light of the concerns expressed in my response to your previous question. Any such diversion would further implicate the provisions of Ark. Const. art. 12, § 5, which prohibits any municipal corporation from appropriating money for "any corporation, *Page 8 
association, institution or individual." With respect to any statutory proscriptions, I can do no more than observe that an AP commission is obliged to authorize only expenditures that are consistent with the provisions of A.C.A. § 26-75-606.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
 DUSTIN McDANIEL Attorney General
[1] Gazaway v. Greene County Equalization Bd.,314 Ark. 569, 575, 864 S.W.2d 233 (1993): accord Chem-Ash,Inc. v. Arkansas Power Light Co.,296 Ark. 83, 751 S.W.2d 353 (1988); Venhaus v. Hale,281 Ark. 390, 663 S.W.2d 930 (1946); Op. Att'y Gen. No. 2010-030.